FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION    2012 FEB 24  PM 3: 15

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

GEORGE STEPHEN ATKINS,

      Plaintiff,

v.                               CASE NO. _____

DISTRICT BOARD OF TRUSTEES
OF EDISON STATE COLLEGE and
KENNETH P. WALKER, individually and    2:12-cv-97-FtM-29SPC
in his official capacity as President of Edison
State College,

      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, GEORGE STEPHEN ATKINS, and sues Defendants,

DISTRICT BOARD OF TRUSTEES OF EDISON STATE COLLEGE and KENNETH P.

WALKER, individually and in his official capacity as President of Edison State College, and alleges:

### I. PRELIMINARY STATEMENT

1.    This action seeks compensatory and punitive damages, costs and attorneys fees for

wrongful discharge in retaliation for exercising freedom of speech and opposing racial discrimination

in violation of Title VII and violations of the Civil Rights Act.

### II. JURISDICTION

2.    This action arises under Title VII codified at 42 U.S.C. § 2000e, *et seq.*, the First and

Fourteenth Amendments of the United States Constitution and the Reconstruction Era Civil Rights

Act codified at 42 U.S.C. §§ 1983, 1988.

3.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and under 42 U.S.C. §§ 1983, 1988, & 2000e-3.

4.      Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983 against Defendant, KENNETH P. WALKER (hereinafter "WALKER"), individually.

5.      Plaintiff also seeks costs and attorneys fees pursuant to Title VII and 42 U.S.C. § 1988.

### III. VENUE

6.      This action properly lies in the Middle District of Florida, Fort Myers, Division, pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.02, because the claim arose in Lee County, Florida and because the Defendants are located in Lee County, Florida which is within the Fort Myers Division of the Middle District of Florida.

### EXHAUSTION OF ADMINISTRATIVE PROCEDURES

7.      Plaintiff, ATKINS, timely filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendants, DISTRICT BOARD OF TRUSTEES OF EDISON STATE COLLEGE (hereinafter "EDISON") and WALKER. Plaintiff received a notice of the right to sue from the EEOC within 90 days of filing this Complaint. A true and accurate copy of the right to sue notice is attached hereto as Exhibit "A".

8.      All conditions precedent to the institution of this action have either occurred, been performed or excused.

### PARTIES

9.      Plaintiff, GEORGE STEPHEN ATKINS (hereinafter "ATKINS") is a citizen and resident of the United States and is entitled to the constitutional provisions provided thereby.

Additionally, at all material times hereto, was employed as Vice President of Academic Affairs at Edison State College.

10.     Defendant, KENNETH P. WALKER (hereinafter "WALKER"), is, and at all times material hereto, was a citizen of the United States residing in Lee County, Florida, and is over the age of 18, and otherwise *sui juris*. Additionally, at all material times hereto, WALKER was employed as President of Edison State College and served as the immediate supervisor of Plaintiff, ATKINS. As President, WALKER was the executive officer of Defendant, DISTRICT BOARD OF TRUSTEES OF EDISON STATE COLLEGE, pursuant to Fla. Stat. § 1001.60, *et seq.* WALKER was responsible for the day-to-day operations of EDISON and he formulated and implemented the final employment policy that caused ATKINS to be discharged.

11.     Defendant, EDISON, is a state owned college with its principal office in Lee County, Florida and which operates under color of law vested in it by the State of Florida pursuant to Fla. Stat. § 1001.60, *et seq* and has in excess of 100 employees. Fla. Stat. § 1001.64 states that EDISON is responsible for the proper operation of Edison State College, which includes the actions of its President, WALKER. EDISON was the employing agency for Plaintiff, ATKINS.

## FACTS APPLICABLE TO ALL CLAIMS

12.     ATKINS was employed by Defendants on or about June 1, 2007 and worked almost continuously until his final termination on or about October 25, 2011. But for his termination, Plaintiff intended to complete his employment career with Defendants.

13.     On or about February 16, 2011, ATKINS became aware that an African American female, Dr. Vivian Lilly, who was selected as the top ranked candidate for the open position of Dean of Nursing and Health Professions at EDISON, was being racially discriminated against in violation

of 42 U.S.C. § 2000e, *et seq.*

14.    ATKINS's belief regarding the discrimination was reaffirmed when his then immediate supervisor, Dr. James Browder, stated that the reason EDISON was not going to hire Dr. Lilly was because the college "has a poor history of hiring out-of-state African Americans."

15.    ATKINS along with fellow employee, Dr. Robert Beeson, complained of discrimination to Pamela Fairfax, Vice President of Human Resources at Edison State, on or about February 21, 2011, which was an exercise of their First Amendment Rights. After their Complaints, no internal investigation was ever undertaken even though Fairfax had expressed concern that she felt discrimination had been on-going at EDISON for about the last ten (10) years.

16.    Ms. Fairfax informed Dr. Browder and WALKER of ATKINS's report of discrimination and in a later meeting between ATKINS and Dr. Browder, Dr. Browder actually dared ATKINS, in a threatening manner, to file an EEOC charge.

17.    After Dr. Browder became aware of ATKINS' complaints of discrimination to H.R., ATKINS was constantly harassed by Dr. Browder and subjected to verbal threats and intimidation.

18.    On or about March 10, 2011, ATKINS advised WALKER of all of this and pleaded with him to intervene, but WALKER's only response was, "why is that discrimination if it is true?" WALKER took no action when advised of the racial discrimination. WALKER also informed ATKINS during this meeting that "discrimination was a serious charge and that Beeson owed Browder an apology."

19.    Dr. Browder kept up his constant harassment of ATKINS, which was being permitted and assisted by WALKER through his unwillingness to address it. ATKINS reluctantly tendered his resignation on March 14, 2011, being unable to tolerate Browder's retaliatory abusive behavior any

longer.

20.     Because of the threat of legal action by ATKINS, EDISON agreed to rehire him in

his previous position in May, 2011, with the understanding that WALKER would now be his

immediate supervisor. Prior to ATKINS returning, Browder resigned or left EDISON by way of a

settlement agreement.

21.     ATKINS was rehired to assist EDISON in completing the Southern Association of

Colleges and Schools (SACS) report, which was needed to renew EDISON'S accreditation. His

rehire was grudgingly agreed to by WALKER, who realized he needed ATKINS for SACS, although

he had not forgiven or forgotten ATKINS's discrimination complaints.

22.     After ATKINS was rehired in May, 2011, EDISON asked a law firm, Henderson,

Franklin, Starnes & Holt, P.A. (hereinafter "Henderson Franklin"), to conduct an external,

"independent and objective" investigation into the discrimination allegations that ATKINS had

raised with H.R. back in February 2011. Henderson Franklin was also the law firm that was

simultaneously defending EDISON against a racial discrimination law claim by Dr. Lilly.

23.     When ATKINS returned to EDISON, ATKINS was subjected to increasing retaliation

and harassment by WALKER for having reported the discriminatory conduct including:

> a.     Forcing ATKINS to take public positions in direct contrast to factual
>         allegations which supported his racial discrimination complaint, including but
>         not limited to splitting the Dean of Nursing and Health Professions position
>         into two positions; and
>
> b.     Getting administrators to lie to EDISON regarding Edison State College's
>         policy of ranking candidates by the hiring committees, which was another

basis argued by ATKINS to prove racial discrimination.

24.    During the course of Henderson Franklin's investigation, and before it issued its final report, WALKER became directly involved in monitoring the investigation and in attempting to direct the course of the investigation.

25.    In particular, WALKER, attempted to interfere with Henderson Franklin's investigation into whether ATKINS was retaliated against, stating that he only hired them to look into whether Dr. Lilly was discriminated against and not issues related to retaliation against ATKINS.

26.    During Henderson Franklin's investigation, ATKINS voluntarily gave two statements in June and July of 2011 to Henderson Franklin in which ATKINS specifically detailed his complaints of racial discrimination at EDISON. ATKINS made the above statements in the exercise of his First Amendment rights, which specifically involved matters of great public concern. Soon thereafter, the harassment from WALKER against ATKINS became drastically more prevalent.

27.    Before the investigation report was released, Henderson Franklin informed WALKER, among other things, that it believed that there was "evidence" that race was a motivating factor in not hiring Dr. Lilly and that there was "evidence" that EDISON had retaliated against ATKINS.

28.    WALKER expressed anger when he found out that the report was going to find discrimination and retaliation. It was conveyed by WALKER to an attorney at Henderson Franklin that if they were going to make any adverse findings against EDISON in their report, that WALKER would fire Henderson Franklin or ensure that they would receive no more work from EDISON.

29.    WALKER didn't ultimately fire Henderson Franklin, but he was successful in having

them change the language in the final report to remove the word "evidence" and replace it with phrases such as "disputed statements and documents, which if proven and accepted." This was done directly to undermine ATKINS's credibility regarding his claim of racial discrimination and to besmirch his reputation.

30.    WALKER'S intentional interference with the findings of the final report was a direct retaliation against ATKINS and was done to discredit and humiliate him. In fact, WALKER'S harassment began to further increase after EDISON settled Dr. Lilly's racial discrimination claim for $85,000 in July, 2011 and again when the modified report was released to the public on August 22, 2011, which contained ATKINS' two prior statements given to the investigators at Henderson Franklin.

31.    ATKINS was demoralized and embarrassed by the modified report because it attacked his credibility and his complaint of discrimination. In addition, ATKINS was further humiliated during the August 23, 2011 meeting of the Board of Trustees when EDISON's counsel, Mark Lupe, reported to the Board that the investigation conducted by Henderson Franklin found that ATKINS and Beeson faced no retaliation for reporting the discrimination complaint.

32.    WALKER systematically attempted to discredit ATKINS, marginalized his role as Vice President of Academic Affairs and SACS Liaison, and verbally and in writing, insulted and harassed him in direct retaliation for his complaints of racial discrimination. All of this began to take a physical toll on ATKINS's health necessitating medical treatment.

33.    ATKINS notified Ms. Fairfax via email, dated October 8, 2011, that he was intending to file an official grievance against WALKER and an EEOC Charge regarding his abusive and hostile behavior which he believed to be in retaliation for speaking out against the discriminatory

conduct at EDISON, a true and accurate copy of which is attached hereto as Exhibit "B". WALKER's conduct toward ATKINS was part of his personal animus toward ATKINS and was done maliciously and intentionally and was intended to hurt and punish ATKINS for exposing the discrimination issue at EDISON.

34. Only a few days after the above email, WALKER placed ATKINS on administrative leave on October 11, 2011 and recommended his termination to EDISON, which was set to be heard at the October 25, 2011 board meeting.

35. As a pattern of discrimination, WALKER also placed Dr. Beeson, the other employee who complained of racial discrimination with ATKINS, on administrative leave and also recommended his termination to Edison, which was set to be heard at the same time as ATKINS' termination.

36. WALKER hired his own private attorney to present the "trumped up" reasons why ATKINS was being terminated and EDISON was instructed that the "factual allegations" of his attorney had to be presumed true. WALKER used his executive position to maliciously and intentionally punish ATKINS in retaliation for his exposing the issue of racial discrimination at EDISON.

37. EDISON voted to discharge ATKINS on or about October 25, 2011, whereby all of his contractual employment rights were denied to him, effective immediately.

38. Defendants did not allow ATKINS an opportunity to be heard or to object to the alleged reasons for his termination given by WALKER before his employment rights were discharged on October 25, 2011.

39. A substantial and motivating factor in the above referenced behavior by EDISON,

through its executive officer, WALKER, was ATKINS' speech and exposure of racial discrimination that had and was taking place at EDISON.

40.     Plaintiff is obligated to pay his attorneys a reasonable fee for their services for which Defendants are liable pursuant to 42 U.S.C. §§ 2000e(k), 1988.

## COUNT I - FIRST AMENDMENT RETALIATORY DISCHARGE

41.     Plaintiff re-alleges paragraphs 1 through 40 above, as if fully set forth herein and are incorporated by reference.

42.     ATKINS voiced complaints to H.R. and made two formal statements to investigators in regards to racial discrimination taking place at Edison State College all of which were made public.

43.     In making the above complaints and statements, ATKINS was exercising his freedom of speech as protected by the First Amendment of the United States Constitution. Speaking about or opposing racial discrimination is a matter of public concern.

44.     On or about October 11, 2011, Defendant, WALKER, wrongfully and intentionally, with the malicious intent to injure the reputation, credibility, and character of the Plaintiff and to chill his free speech and to intimidate others who might complain, issued a letter placing ATKINS on administrative leave.

45.     In order to place ATKINS on administrative leave and ultimately terminate him, WALKER created false evidence against ATKINS alleging insubordination. Said false allegations were contrived, ostensible, and pretextual reasons for his termination.

46.     The above false allegations were made public by WALKER's private attorney at EDISON's public board meeting on October 25, 2011. ATKINS was not provided an

opportunity to rebut any evidence and in fact, WALKER stated to EDISON that all of his factual allegations had to be presumed true and accurate.

47.     At the above board meeting and in reliance upon WALKER's representations, Defendants wrongfully, with the intent to injure the reputation and character of the plaintiff and to chill his free speech, issued a Notice of Termination, immediately terminating ATKINS rights under his employment contract with EDISON.

48.     The unconstitutional termination of ATKINS was done in retaliation for Plaintiff's exercise of his First Amendment rights, which played a substantial part in EDISON's decision to terminate ATKINS. ATKINS' termination was also done in order to make an example of Plaintiff, to place a warning to other administrators and faculty who wished to exercise their constitutional rights.

49.     Defendants' discharge of ATKINS was arbitrary, malicious, willful, retaliatory, oppressive, in bad faith, and for trivial, personal and improper reasons, all of which were the proximate cause of ATKINS's injuries and damages.

50.     At all times material hereto, Defendants were fully aware that it was clearly established law that it is unlawful to terminate an employee in retaliation for exercising his freedom of speech and for speaking out about and against racial discrimination.

51.     Defendants' conduct caused ATKINS to suffer irreparable harm, which will continue unless enjoined by this court. ATKINS has no remedy at law to redress the deprivation of his rights. Defendants caused ATKINS to be unlawfully deprived of wages and other benefits of his employment, damaged his career, and other employment related opportunities, and deprived him of occupational liberty in his job.

52. Defendants' intentional misconduct further caused ATKINS to suffer substantial personal injuries including but not limited to anxiety, trauma, stress, high blood pressure, emotional distress, embarrassment, loss of future employment prospects, damage to his reputation and has permanently and adversely affected ATKINS's life and career.

**WHEREFORE**, Plaintiff, GEORGE STEPHEN ATKINS, respectfully prays that this Court afford the following relief:

a. Advance this case on the docket;

b. Issue a declaratory judgment that Defendants' practices towards ATKINS violated his rights under the First Amendment of the United States Constitution;

c. Enjoin Defendant, EDISON, its administrators and staff, from continuing or maintaining the policy, practice, or custom of violations of retaliating against employees for exercising their freedom of speech;

d. Order Defendants to remedy the First Amendment violations against ATKINS by:

1. Granting ATKINS a sum of compensatory and consequential damages exceeding $250,000.00 against each Defendant;

2. Granting ATKINS a sum of punitive damages exceeding $100,000.00 against Defendant, WALKER, individually;

3. Reinstate ATKINS to his position;

4. Award ATKINS all back pay and front pay in a substantial

sum exceeding three years of salary and benefits;

5.    Award ATKINS damages for pain, suffering, humiliation, damage to reputation, and personal injuries;

6.    Award ATKINS's reasonable attorney fees and costs incurred to bring this lawsuit pursuant to 42 U.S.C. § 1988;

7.    For a trial by jury on all issues triable of right by a jury;

8.    Retain jurisdiction to assure full compliance with the law; and

9.    Award such other and further relief as this court deems just and proper.

## COUNT II - RETALIATION UNDER TITLE VII

53.    Plaintiff re-alleges paragraphs 1 through 40 above, as if fully set forth herein and are incorporated by reference.

54.    Plaintiff, ATKINS, was employed by Defendants, EDISON and WALKER, as Vice President of Academic Affairs.

55.    At all material times hereto, WALKER was acting as an agent of EDISON.

56.    Plaintiff, ATKINS, was subjected to severe intentional harassment and abuse by Defendant, WALKER, in retaliation for opposing and exposing racial discrimination against Dr. Lilly by EDISON and WALKER

57.    WALKER placed ATKINS on administrative leave on October 11, 2011 whereby he fabricated false factual allegations alleging insubordination to support his decision to discriminate against ATKINS.

58.     Relying only on WALKER's fabricated factual allegations of insubordination, EDISON wrongfully terminated ATKINS on October 25, 2011.

59.     Defendants' discharge of ATKINS was arbitrary, malicious, willful, retaliatory, oppressive, in bad faith, and for trivial, personal and improper reasons, all of which were the proximate cause of ATKINS's injuries and damages.

60.     At all times material hereto, Defendants were fully aware that it was clearly established law that it is unlawful to retaliate against individuals for opposing racial discrimination in the workplace.

61.     Defendants' conduct caused ATKINS to suffer irreparable harm, which will continue unless enjoined by this court. ATKINS has no remedy at law to redress the deprivation of his rights. Defendants caused ATKINS to be unlawfully deprived of wages and other benefits of his employment relationship, his career, and other employment related opportunities, and the occupational liberty in his job.

62.     Defendants' intentional misconduct further caused ATKINS to suffer substantial personal injuries including but not limited to anxiety, trauma, stress, high blood pressure, emotional distress, embarrassment, loss of future employment prospects, damage to his reputation and has permanently and adversely affected ATKINS's life and career.

**WHEREFORE**, Plaintiff, GEORGE STEPHEN ATKINS, respectfully prays that this Court afford the following relief:

    a.    Advance this case on the docket;

    b.    Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

c.     Issue a declaratory judgment that Defendants' practices towards ATKINS violated his rights under Title VII, 42 U.S.C. § 2000e-3;

d.     Enjoin Defendant, EDISON, its administrators and staff, from continuing or maintaining the policy, practice, or custom of violations of retaliating against employees for opposing violations of Title VII;

e.     Order Defendants to remedy the Title VII violations against ATKINS by:

    1.    Granting ATKINS a sum of compensatory and consequential damages exceeding $250,000.00 against Defendants, EDISON and WALKER, in his official capacity;

    2.    Reinstate ATKINS to his position;

    3.    Award ATKINS all back pay and front pay in a substantial sum exceeding three years of salary and benefits;

    4.    Award ATKINS damages for pain, suffering, humiliation, damage to reputation, and personal injuries;

    5.    Award ATKINS' reasonable attorney fees and costs incurred to bring this lawsuit pursuant to 42 U.S.C. § 2000e, *et seq.*;

    6.    For a trial by jury on all issues;

    7.    Retain jurisdiction to assure full compliance with law; and

    8.    Award such other and further relief as this court deems just and proper.

Respectfully submitted,

Patrick E. Geraghty, Esquire/FBN: 0114920
pat@7-litagators.com
Justin T. Stockman, Esquire/FBN: 0070770
justin@7-litagators.com
Geraghty, Dougherty & Edwards, P.A.
Post Office Box 1605
Fort Myers, Florida 33902-1605
Telephone: (239) 334-9500
Facsimile : (239) 334-8930