UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE STEPHEN ATKINS,

    Plaintiff,

v.                                                       Case No:  2:12-cv-97-Ftm-29SPC

DISTRICT BOARD OF TRUSTEES OF
EDISON STATE COLLEGE and
KENNETH P. WALKER,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Plaintiff's Motion for an Order compelling Discovery Claimed to be Privileged (Doc. #27) filed on January 22, 2013. Defendants Edison and Walker's Response in Opposition to Plaintiff's Motion for an Order Compelling Discovery Claimed to be Privileged (Doc. #35) was filed on February 8, 2013. Thus, the Motion is now ripe for review.

## BACKGROUND

Plaintiff George Stephen Atkins (hereinafter "Atkins") filed a two-count Amended Complaint alleging First Amendment retaliatory discharge against Defendants District Board of Trustees of Edison State College (hereinafter "Edison") and Kenneth P. Walker, individually (hereinafter "Walker"), and retaliation under Title VII against Defendant Edison. Plaintiff's Amended Complaint is founded upon allegations that he was terminated from employment at Edison because of his complaints of racial discrimination at the college. Specifically, Atkins alleges that on or about February 16, 2011, he became aware that an African American female, Dr. Vivian Lilly (hereinafter "Lilly"), who was selected as the top-ranked candidate for the open

position of the Dean of Nursing and Health Professions at Edison, was being racially discrimination against in violation of 42 U.S.C. § 2000e, *et seq*. (Doc. #11, ¶13). Atkins alleges that his belief regarding the discrimination was affirmed when his then-immediate supervisor, Dr. James Browder (hereinafter "Browder"), stated that the reason Edison was not going to hire Dr. Lilly was because the college "has a poor history of hiring out-of-state African Americans." (Id. at ¶14). Atkins alleges he complained to Pam Fairfax with Human Resources at Edison and that after Browder became aware of Atkins' complaints, he was constantly harassed by Browder and subjected to verbal threats and intimidation. (Id. at ¶15, 17). Atkins alleges that he advised Walker of Browder's behavior and was ultimately unable to tolerate Browder's retaliatory behavior and therefore tendered his resignation from Edison on March 14, 2011. (Id. at ¶18-19).

Atkins further alleges that because of the threat of legal action by Atkins, Edison agreed to rehire him in his previous position in May 2011, with the understanding that Walker would now be his immediate supervisor. Prior to Atkins returning, Browder resigned or left Edison by way of a settlement agreement. (Id. at ¶20). After Atkins was rehired, Edison retained the law firm of Henderson, Franklin, Starnes & Holt, P.A. (hereinafter "Henderson Franklin"), to conduct an external, independent, and objective investigation into the discrimination allegations that Atkins had raised with human resources, among other things. (Id. at ¶22.). Atkins alleges that when he returned to Edison, he was subjected to increasing retaliation and harassment by Walker for having reported the discriminatory conduct. (Id. at ¶23). Atkins alleges that he notified human resources on October 8, 2011, that he was intending to file an official grievance against Walker and an EEOC charge regarding his abusive and hostile behavior which he believed to be in direct retaliation for speaking out against the discriminatory conduct at Edison. (Id. at ¶33). A few days later, Walker placed Atkins on administrative leave and recommended

his termination to Edison, which was set to be heard at an October 25, 2011 board meeting. (Id. at ¶34). Edison ultimately voted to discharge Atkins at the board meeting. (Id. at ¶37). Walker was later terminated by Edison.

Defendants have alleged that no discrimination or retaliation took place and that Edison and Walker had nondiscriminatory reasons to terminate Atkins, including failure to report unlawful course substitutions, as well as other acts of insubordination.

With regard to the issues raised in the instant Motion, on November 2, 2012, Plaintiff advised Defendants that he wished to take the deposition of Robert Shearman, Esq., an attorney with Henderson Franklin. Defendants state that in the course of his longstanding relationship with Edison, Mr. Shearman was asked by the college in late March 2011 to represent it in two separate matters: one regarding issues raised by Plaintiff and one regarding issued raised by Dr. Vivian Lilly. Edison arranged for an investigation of the allegations of discrimination made by Lilly, Atkins, and Dr. Robert Beeson.[1] The investigation was to be independent of Mr. Shearman's representation as it pertained to the taking of witness statements, but Mr. Shearman and Henderson Franklin continued to act as Edison's attorney for all other purposes, including serving as a liaison between Edison and the attorneys conducting the investigation, which was conducted by attorneys Vicki Sproat and John Potanovic. Henderson Franklin's final report was released to the public on August 22, 2011. At the August 22, 2011 board meeting, the Henderson Franklin report, along with copies of the investigation interviews were presented to Edison at a public board meeting and it was also published on Edison's website.

---

[1] Beeson was a colleague of Plaintiff at Edison and has filed a companion lawsuit against Edison and Walker, case no. 2:12-cv-214.

Subsequently, the law firm of Fowler, White, & Boggs, P.A. was hired by Edison to investigate if there was evidence to terminate Walker from Edison (hereinafter "the Fowler White report"). The Fowler White report was presented to Edison at the January 24, 2012 public board meeting, wherein the report detailed Walker's communications with Mr. Shearman during the course of the Fowler White investigation. At no time did Edison or Walker object to the publication of the Henderson Franklin report or the Fowler White report based upon attorney-client privilege.

Mr. Shearman's deposition was taken on January 9, 2013. At the deposition, defense counsel refused to allow Mr. Shearman to answer question based upon an alleged attorney-client privilege that exists between Defendants, Edison and Walker, and Mr. Shearman. The line of questioning was as follows:

a. To avoid confusion, as I understand it in regard to the request that Henderson, Franklin do an investigation into allegations of racial discrimination in hiring, the way it was to take place is two other members of the Henderson, Franklin firm would actually do the investigation and you would be the liaison, if that's the term for it, between them and the college?
    i. [Instructed not to answer]

b. Getting back to the request that Henderson, Franklin do an investigation into alleged racial discrimination in hiring practices at Edison State, what was the firm's position in regard to how that was going to be handled?
    i. A. I can tell you my proposal to the college and my position was – [Instructed not to answer]

c. Was that part of the material you were given after you were retained by Edison State in regard to the Dr. Atkins matter?
    i. I did receive this from Edison State after I had been retained to look into the –

d. Who gave it to you from Edison State?
    i. – issue of discriminatory hiring. I don't recall a specific individual who sent it, whether it was a staff assistant or someone, but I understood it was being sent under Dr. Walker's authority on behalf of the college.

e. Did you discuss the contents of this letter with Dr. Walker at your meeting, your first meeting with him?
    i. [Instructed not to answer]

4

     f. Was it your understanding that [John Potanovic and Vicki Sproat] would handle the actual investigation and you would be the liaison?
          i. My understanding is that they would handle the investigation and that I would continue to represent the college on various matters and would communicate regarding the status of their investigation with the college.

     g. Now, did Dr. Walker when he returned from a five-week vacation, which I think might have been a cruise, ask to be involved in the investigation by Henderson, Franklin into allegations of discriminatory hiring practices?
          i. [Instructed not to answer]

     h. How would you have characterized [the statement under Roman numeral V on page 16 of the FW Report]?
          i. That Dr. Walker became involved in monitoring the progress of the report, and in stating what he believed the scope of the report should be.

     i. What do you mean by that?
          i. Dr. Walker had stated to me that he understood Henderson, Franklin to have been retained to investigate the complaints of discrimination, and that while there may have been statements made by individuals interviewed, that they believed they were retaliated against for reporting complaints of discrimination, that that was not within the scope of what Henderson, Franklin was engaged to do, and that the scope of the report should be limited to the discrimination complaints rather than retaliation complaints.

     j. And how did he express that to you, in an E-mail, letter, or face-to-face?
          i. [Instructed not to answer]

     k. Did Dr. Walker at some point tell you since Edison State was paying for Henderson, Franklin's services they should do what Edison State wanted to do, or words to that effect?
          i. [Instructed not to answer]

     l. Now, did Dr. Walker threaten to fire Henderson, Franklin at one point during the course of Henderson, Franklin's investigation?
          i. [Instructed not to answer]

     m. Did Dr. Walker suggest that Henderson, Franklin would get no more work from Edison State College unless they changed verbiage or wording in their report?
          i. [Instructed not to answer]

     n. Do you know if Vicki Sproat or John Potanovic were upset at Dr. Walker's request they change the language in the report?
          i. [Instructed not to answer]

o. Did Dr. Walker request of you as to whether or not Henderson, Franklin would make any negative findings against the college based on their investigation?
      i. [Instructed not to answer]

p. Did Dr. Walker express concern that Henderson, Franklin was investigating allegations of retaliation against Dr. Atkins and Dr. Beeson by Edison State?
      i. [Instructed not to answer]

q. Before the report was issue did you or someone at Henderson Franklin inform Dr. Walker among other things that it believed that there was evidence that race was a motivating factor in the delayed offer to Dr. Lilly for the position of the Dean of the School of Nursing and Health Professions?
      i. [Instructed not to answer]

r. And additionally that there was evidence that the college retaliated against Dr. Atkins and Dr. Beeson for complaints of racially discriminatory hiring practices at the college?
      i. [Instructed not to answer]

s. Did Dr. Walker express to you, Mr. Shearman, that he was extremely concerned at the use of the word, quote, evidence, close quote, in the report?
      i. [Instructed not to answer]

t. And I'm reading now from page 17 of that report, which is Exhibit 12. Did Dr. Walker tell you, Mr. Shearman, that he did not see how Henderson, Franklin could represent the college if it was going to find discrimination?
      i. [Instructed not to answer]

u. And finally, did you understand Dr. Walker to convey to you that if Henderson, Franklin was going to make any adverse findings against the college in its report, that is that the college engaged in discrimination in any respect, that he would have no choice but to fire Henderson, Franklin?
      i. [Instructed not to answer]

v. Did you tell Dr. Walker in response to that that you accepted his comments, but you asked Dr. Walker to think how it would look if he terminated the law firm just before the release of the report?
      i. [Instructed not to answer]

w. Did you tell Dr. Walker that it would look like he, Dr. Walker, did not like the findings that Henderson, Franklin was about to make?
      i. [Instructed not to answer]

x. Do you know whether or not Dr. Walker suggested that the law firm of Allen, Norton & Blue meet with Henderson, Franklin and, quote, lecture, close quote, them on ethics and how the law firm could not make adverse findings against the college because Henderson, Franklin was the college's lawyer?

6

        i. [Instructed not to answer]

    y. Did you tell the attorneys at Fowler White that Dr. Walker made the statement about firing Henderson, Franklin when you, Dr. Walker and Mr. Lupe met in your office at Henderson, Franklin?
        i. [Instructed not to answer]

    z. Do you recall at that meeting that Henderson, Franklin, that would be you and I assume Vicki Sproat and John Potanovic, agreed to change the language, but not the results and findings of the investigation?
        i. [Instructed not to answer]

    aa. Was [the change to the HF Report] at the request of Dr. Walker?
        i. [Instructed not to answer]

    bb. And did you relay [the findings of the HR Report] to Dr. Walker?
        i. [Instructed not to answer]

    cc. Can you tell me the approximate date on which you advised Dr. Walker of the potential of adverse findings against Edison State from the investigation conducted by Vicki Sproat and John Potanovic?
        i. [Instructed not to answer]

Deposition of Robert Shearman, dated January 9, 2013 (Doc. #27-1, Pl. Ex. A, pp. 15-60).

Plaintiff has filed this Motion to Compel requesting an order from the Court requiring Mr. Shearman to be re-deposed on the subject matters that were wrongfully objected to and recover expenses incurred in making this Motion. As of the date of filing this Motion, Plaintiff asserts that several other depositions have been taken in this case where the same or similar objections based on attorney-client privilege were raised, including the depositions of Walker, Mark Lupe,[2] and Vicki Sproat. Plaintiff also requests that the Court allow Plaintiff to re-depose these witnesses on the subject matter addressed in his Motion.

---

[2] Mark Lupe is the General Counsel of Edison State College.

7

**DISCUSSION**

In order to invoke the attorney-client privilege, the claimant must establish the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir. 1990). "Because it serves to obscure the truth, ... it should be construed as narrowly as is consistent with its purpose . . . [t]hus, [a] communication between an attorney and his client will be protected if it is: '(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential.'" United States v. Noriega, 917 F.2d 1543, 1551 (11th Cir. 1990) (citing United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985)). The attorney-client privilege is only available when all the elements are present. Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc., 230 F.R.D. 688, 690 (M.D. Fla. 2005) (citing Provenzano v. Singletary, 3 F. Supp. 2d 1353, 1366 (M.D. Fla. 1999) *aff'd,* 148 F.3d 1327 (11th Cir. 1998)). The party asserting the privilege has the burden of proving the existence of the privilege. United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991). "It is a bedrock principle that the attorney-client privilege is the client's and his alone. If the client wishes to waive it, the attorney may not assert it, either for the client's or his own benefit." Noriega, 917 F.2d at 1551 (internal quotations omitted). "The federal common law of privilege applies to all claims in a federal question case." Chase v. Nova Southeastern University, Inc., 2012 WL 2285915, *2 (S.D. Fla. June 18, 2012). The Eleventh Circuit recognizes that the attorney-client privilege, despite its

value, is "an obstacle to the investigation of truth;" therefore, it is not without exceptions, <u>Cox v. Admin. U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1414 (11th Cir. 1994) (internal marks omitted), and "should be construed as narrowly as consistent with its purpose," <u>United States v. Suarez</u>, 820 F.2d 1158, 1160 (11th Cir. 1987), *cert. denied*, 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987).

It is Plaintiff's contention that no attorney-client privilege exists between Edison or Walker and Mr. Shearman in regards to the independent investigation of Henderson Franklin and therefore raising the privilege at his deposition regarding these issues has no merit. Plaintiff represents that it is not seeking verbal communications between Mr. Shearman and Edison as it relates to his legal representation defending the college as to Lilly's claims or the first retaliation claim, only Mr. Shearman's involvement in the independent investigation conducted by Henderson Franklin. Further, at this time, Defendants agree that no attorney-client privilege exists as to the written communications at issue, but does argue there is a privilege with regard to verbal communications with legal counsel regarding the written communications. Plaintiff's counsel has expressed his opinion that there could be no privilege in the representation of a public body and that, even if there was a privilege, it was waived by Mr. Shearman testifying or giving a statement to another law firm that was investigating the grounds for the termination of Walker.

It is known that Mr. Shearman had communications with Walker in regards to the firm's independent investigation before Henderson Franklin's final report was released to the public on August 22, 2011. The Fowler White report was issued after the termination of Plaintiff and discusses in detail the Henderson Franklin investigation into allegations of discriminatory hiring practices. Mr. Shearman apparently gave an interview or statement to the Fowler White

investigators, as their report indicates that "According to Mr. Shearman, during the course of Henderson Franklin's investigation – and before it issued its Report – Dr. Walker became involved in monitoring the investigation and in attempting to direct the course of the investigation." (Doc. #27-3, Pl. Ex. C, p. 16-17). The Fowler White report goes on for nearly four pages regarding the information provided by Mr. Shearman and Mr. Lupe, detailing Mr. Shearman's interactions with Walker with respect to the Henderson Franklin investigation and report. (Id. at pp. 16-19). It indicates that attorneys Sproat and Potanovic conducted the investigation for Henderson Franklin and that Mr. Shearman "acted as the liaison between Attorneys Sproat and Potanovic and the College." (Id. at p. 16).

The thrust of Plaintiff's argument is that Henderson Franklin was not performing legal services or assistance when it conducted the independent investigation (the third element of the privilege) and if there is a privilege, it has been waived by Defendants when it had the Henderson Franklin and Fowler White reports presented at public meetings. The Henderson Franklin report at issue here was used to investigate and report on complaints of discriminatory hiring practices at Edison, after which Walker was terminated. At this time, Plaintiff is not seeking verbal communications between Mr. Shearman and Edison as it relates to his legal representation defending the college as to Dr. Lilly's claims or the First Retaliation Claim, only his involvement in the independent investigation.

Plaintiff's argument is well taken. The Court does not believe that an attorney-client privilege attaches in this case. "In order to show that communications made to an attorney are within the privilege, it must be shown that 'the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance.'" United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991) (citing United States v. Ponder,

475 F.3d 37, 39 (5th Cir. 1973)).  Without a showing that the representatives were acting in a legal capacity, Defendants cannot establish that the privilege attaches.  It is not a violation of attorney-client privilege for the witness to acknowledge what the Henderson Franklin and Fowler White reports – both public document – say.  Nor is it a violation of attorney-client privilege to discuss the circumstances surrounding the public reports as the attorneys were acting in a capacity to conduct an external "independent and objective" investigation into the discrimination that Atkins had raised and to advise Edison College in a public report as to their findings and opinions.  Plaintiff is not seeking verbal communications between Mr. Shearman and Edison as it relates to his legal representation defending the college as to Dr. Lilly's claims or the First Retaliation claim, only his involvement in the independent investigation.  Edison College was perfectly aware that the information provided to both Henderson Franklin and Fowler White would or could become public as at the conclusion of their investigation as the findings were going to be made public in the final reports.  "The key question in determining the existence of a privileged communication is whether the client reasonably understood the conference to be confidential."  Schaltenbrand, 930 F.2d at 1562 (internal quotations omitted).  Therefore, the Motion to Compel is due to be granted and the deposition of Mr. Shearman may be continued.  Mr. Shearman will be required to answer the questions as set forth in paragraph 26 of Plaintiff's Brief.

The request to retake the depositions of Walker, Mark Lupe, and Vicki Sproat are denied at this time without prejudice.  Even though the Court has been provided with a copy of the depositions of Walker (Doc. #26) and Vicki Sproat (Doc. #37), the Court is not clear which questions in the deposition are at issue.  With regard to Mr. Lupe, the Court does not see the deposition transcript in the record.  Therefore makes no determination as to whether the attorney-

client privilege objections were proper in these depositions. The Court will entertain another motion to compel which sets forth the specific questions at issue with regard to the privilege in those depositions.

Finally, Plaintiff is seeking reimbursement of all expenses incurred in bringing this Motion. Federal Rule of Civil Procedure 37(a)(5)(A) provides:

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

The Court finds that the objections raised by Defendants were substantially justified. Substantially justified means that "reasonable people could differ as to the appropriateness of the contested action." Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997) (citing Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490). Therefore, the request for reimbursement of expenses is denied at this time.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff's Motion for an Order compelling Discovery Claimed to be Privileged (Doc. #27) is **GRANTED in part and DENIED in part**.

(2) The motion to compel to allow the deposition of Mr. Shearman to continue is **GRANTED** as set forth in this Order. Mr. Shearman will be required to answer the questions as set forth in paragraph 26 of Plaintiff's Brief.

(3) The motion to compel to allow the depositions of Walker, Sproat, and Lupe to continue is **DENIED without prejudice**.

(4) Plaintiff's request for reimbursement of expenses is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of March, 2013.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record